## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **JOHN BROOKS,** and **ANNA MARINEZ** individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **ACCREDITED DEBT RELIEF, LLC** a foreign limited liability company, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Anna Marinez ("Marinez" or "Plaintiff Marinez") and Plaintiff John Brooks ("Brooks" and "Plaintiff Brooks") bring this Class Action against Defendant Accredited Debt Relief, LLC ("Accredited Debt Relief" or "Defendant") to stop its practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent, and to obtain redress for all persons injured by its conduct, including injunctive relief. Plaintiff Marinez and Plaintiff Brooks, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.      Defendant transmits text messages to consumers using an autodialer without their prior express written consent in an effort to solicit their business. Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages to consumers' cellular telephones without consent – and

1

even to those who have registered their numbers on the National Do Not Call Registry – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2.      By sending these text messages, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant sent the text messages knowing they interfered with Plaintiffs and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

3.      The TCPA was enacted to protect consumers from text messages like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiffs file this lawsuit seeking injunctive relief, requiring Defendant to cease all solicitation text-messaging activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

## PARTIES

4.      Plaintiff Marinez is a natural person residing in the City of Chicago in the State of Illinois.

5.      Plaintiff Brooks is a natural person residing in the City of Port Saint Lucie in the State of Florida.

6.     Defendant is a company with a principal place of business located at 591 Camino De la Reina, San Diego, California 92108.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, solicits consumers in this District, sent and continues to send unsolicited text messages to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff Brooks resides in this District.

## COMMON FACTUAL ALLEGATIONS

9.     In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase their customer base.

10.    Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

11.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

12.     Defendant is a company that specializes in assisting consumers with various debt-relief programs and matching them to the appropriate debt-settlement company.   To secure business, Defendant contacts consumers with solicitation text messages.[1]

13.     But, unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent.

14.     Defendant sends text messages from the following telephone numbers and others: 509-608-3660, 872-772-7051 and 707-408-1725.

15.     In sending these text messages, Defendant took no steps to acquire the prior express written consent of Plaintiffs or the Class Members.

16.     Defendant sent the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

---

[1] Indeed, one website reads, "[Defendant] does not provide debt relief services directly.  Instead, it matches debtors with debt relief companies in its network.  When you submit you information, either over the phone or through its website, [Defendant] passes on your information to partners that operate in your state." *See* https://www.supermoney.com/reviews/debt-settlement/accredited-debt-relief.

17.     In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

18.     In fact, Defendant advertises its use of an ATDS on its very own website.  The following image is from www.accrediteddebtrelief.com:



19.     The above image reads, in pertinent part, "[b]y clicking you also agree to [Defendant's] Privacy Policy and Terms of Service, and further agreed anyone contacting you because of your consent *may use an automatic telephone dialing system ...*" (emphasis added).

5

20.     Defendant was and is aware that text messages were and are being made without the prior express written consent of the text message recipients.

21.     Defendant knows, or is reckless in not knowing, that its text messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

22.     Upon information and belief, and via investigation by Plaintiffs' attorneys, each of the text messages sent to Plaintiffs and the Classes are affiliated with Defendant.[2]

23.     By sending the text messages at issue in this Complaint, Defendant caused Plaintiffs and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

24.     In response to Defendant's unlawful conduct, Plaintiffs filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF ANNA MARINEZ

25.     On January 31, 2007, Plaintiff Marinez's cellular telephone number was registered on the National Do Not Call Registry.

---

[2] Upon calling 707-408-1725 a live agent holds his or herself out to be an agent of "Accredited Debt Relief."  Similarly, when calling 509-608-3660 and 872-772-7051, a person is connected to a live agent holding themselves out to be an agent of "Accredited Debt Relief."

26.     On or around May of 2017, and more than 30 days after her number was registered on the National Do Not Call Registry, Plaintiff Marinez received two solicitation text messages – one from 509-608-3660 and one from 872-772-7051.

27.     On May 17, 2017 Plaintiff Marinez received a text message from 509-608-3660 that read, "[t]ired of being in debt? Call now to speak with a specialist for your free analysis and personalized solution! Don't wait, Anna. We can help."

28.     The next day, on May 18, 2017, Plaintiff Marinez received another text message, this time from 872-772-7051 that read, "Anna, is credit card debt ruining your life? Cut your bills in half! Call Now to see if you qualify, or let me know a better time for a call."

29.     Both of the aforementioned text messages are displayed below:





30.     Plaintiff Marinez did not request that Accredited Debt Relief and/or its affiliates send text messages to her or offer her its services using an ATDS.  Simply put, Plaintiff has never provided her prior express written consent to Accredited Debt Relief to send solicitations text messages to her and she has no business relationship with Accredit Debt Relief.

31.     By sending unauthorized text messages as alleged herein, Accredited Debt Relief caused Plaintiff actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of her cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory.

32.     On behalf of the Classes, Plaintiff seeks an injunction requiring Accredited Debt Releif to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF JOHN BROOKS

33.     On September 2, 2005, Plaintiff Brook's cellular telephone number was registered on the National Do Not Call Registry.

34.     On or around September of 2017, and more than 30 days after his number was registered on the National Do Not Call Registry, Plaintiff Brooks received two solicitation text messages on his cellular telephone from 707-408-1725.

35.     On September 27, 2017 Plaintiff Brooks received a text message from 707-408-1725 that read, "Want to eliminate your credit card debt to almost nothing? Call now for free information in how we are here to help.  Reply NO to be removed."

36.     The next day, on September 28, 2017, Plaintiff Brooks received another text message from the 707-408-1725 that read, "Find out how simple it is to possibly save thousands of dollars by calling for the secret credit card companies don't want you to know."

37.     An image of the aforementioned text messages sent to Plaintiff Brooks is produced below:



38.     Plaintiff Brooks did not request that Accredited Debt Relief and/or its affiliates send text messages to him or offer its services using an ATDS.   Simply put, Plaintiff has never provided his prior express written consent to Accredited Debt Relief to send solicitations text messages and has no business relationship with Accredit Debt Relief.

39.     By sending unauthorized text messages as alleged herein, Accredited Debt Relief caused Plaintiff Brooks actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of his cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones.

40. On behalf of the Classes, Plaintiff seeks an injunction requiring Accredited Debt Releif to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

41. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following two Classes:

> **Text Message No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiffs.

> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiffs.

42. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiffs anticipate the need to amend the Class definitions following appropriate discovery.

43.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent text messages to thousands of consumers who fall into the definition of the Classes.  Members of the Classes can be easily identified through Defendant's records.

44.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a)  whether Defendant's conduct constitutes a violation of the TCPA;
>
> (b)  whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;
>
> (c)  whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;
>
> (d)  whether Defendant systematically made multiple telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry; and
>
> (e)  whether Defendant obtained prior express written consent to contact any class members.

45.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.  Plaintiffs and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor his counsel has any interest adverse to the Classes.

46.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs.  Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs the Text Message No Consent Class)**

47.     Plaintiffs repeat and re-allege paragraphs 1-46 of this Complaint and incorporate them herein by reference.

48.     Defendant sent solicitation text messages to cellular telephone numbers belonging to Plaintiffs and other members of the Text Message No Consent Class without first obtaining prior express written consent.

49.     Defendant sent the autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human

intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiffs and other consumers.

50.     By sending the unsolicited text messages to Plaintiffs and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

51.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

52.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Text Message No Consent Class.

### SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs and the Do Not Call Registry Class)

53.     Plaintiffs incorporate and re-allege by reference paragraphs 1-46 as if fully set forth herein.

54.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of

said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

55.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[3]

57.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

58.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do

Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

59.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

60.     Defendant made more than one unsolicited telephone call to Plaintiffs and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

61.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

62.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

63.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

64.     An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes, and appointing their counsel as Class Counsel;

65.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

66.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

67.     A declaratory judgment that Defendant's text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

68.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

69.     An order requiring Defendant to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

70.     An injunction requiring Defendant to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

71.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

72.     An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

73.     An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

74.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

75.     Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Date:   December 4, 2017

Respectfully Submitted,

| **HIRALDO P.A.** | **LAW OFFICES OF STEFAN COLEMAN P.A.** |
|---|---|
| */s/ Manuel S. Hiraldo* | */s/ Stefan Coleman* |
| Manuel S. Hiraldo, Esq. | Stefan Coleman, Esq. |
| Florida Bar No. 030380 | Florida Bar No. 030188 |
| 401 E. Las Olas Boulevard | 201 S. Biscayne Blvd., 28th Floor |
| Suite 1400 | Miami, Florida 333131 |
| Ft. Lauderdale, Florida 33301 | Telephone: (888) 333-9427 |
| mhiraldo@hiraldolaw.com | Facsimile: (888) 498-8946 |
| Telephone: 954.400.4713 | |
| | |
| *Counsel for Plaintiff and the Class* | *Counsel for Plaintiff and the Class* |